IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY M. HELFERTY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-2269 |
| | : | |
| CHESTER COUNTY PRISON, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**GOLDBERG, C.J.**                                                                                                        **JUNE 25, 2024**

Currently before the Court are a Motion to Proceed *In Forma Pauperis* and a civil rights Complaint filed by Anthony M. Helferty, a convicted and sentenced parole violator incarcerated at the Chester County Prison, based on the confiscation of Helferty's tablet through which he accesses legal resources and mail. For the following reasons, I will grant Helferty leave to proceed *in forma pauperis* and dismiss the Complaint without prejudice to Helferty filing an amended complaint.

**I.    FACTUAL ALLEGATIONS**

Helferty alleges that in January 2024, all inmates at Chester County Prison were provided personal tablets. (Compl. at 5.)[1] The tablets were provided in anticipation of the prison's change, as of March 1, 2024, from providing inmates with physical mail to a system whereby a third-party vendor scans the mail, after which the scan is sent electronically to the intended inmate-recipient for viewing on the tablet. (*Id.*) The prison also "disbanded" its physical library and installed a Lexis "law library application" on each tablet to provide inmates access to legal resources. (*Id.*)

---

[1] I adopt the pagination provided to the Complaint by the CM/ECF docketing system.

As the basis for his claims in this case, Helferty alleges that on April 16, 2024, Officer Robert Mastjnak confiscated his tablet, thereby "depriving him of access to the courts protected under the 14th amendment and access to incoming mail protected under the 1st amendment." (*Id.* at 5, 7.) Helferty does not specify what events led to the seizure of his tablet but alleges that another inmate was "involved in said incident and was also instructed to surrender his personal tablet." (*Id.* at 7.) Helferty sought the return of his tablet by making requests of superior officers and filing a grievance on May 4, 2024, thirteen days before he prepared the Complaint in the instant civil action. (*Id.* at 7, 9, 13.)

Helferty attached a copy of the grievance as an exhibit to the Complaint. The grievance suggests that the "incident" alluded to in the Complaint may have involved a disciplinary infraction because it notes that Helferty was "confined to restrictive housing" as of the date his tablet was taken from him. (*Id.* at 15.) The grievance also asserts that Helferty "had a hearing in the common pleas court on April 24th 2024 with a less than favorable decision" and that he also has "two pending motions." (*Id.* at 16.) Helferty alleges that Deputy Warden George Roberts oversaw and approved Mastjnak's actions and failed to respond to his grievance. (*Id.* at 5, 7.)

Helferty brings this civil action, pursuant to 42 U.S.C. § 1983, against the Chester County Prison and Mastjnak, Deputy Warden Roberts, and Warden Howard Holland in their individual and official capacities. (*Id.* at 3.) Specifically, he alleges that the confiscation of his tablet resulted in the denial of his Fourteenth Amendment right to access the courts and his First Amendment right to receive incoming mail. (*Id.* at 5.) Helferty seeks damages for the "psychological and

2

emotional injury" that he experienced as a result of being deprived the ability to communicate with his family, as well as punitive damages.[2] (*Id.* at 6.)

## II. STANDARD OF REVIEW

Helferty will be granted leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies and requires dismissal of the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Helferty is proceeding *pro se*, I construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III. DISCUSSION

---

[2] Helferty also seeks unspecified declaratory and injunctive relief, but nothing in the Complaint suggests that he has met the criteria for entitlement to such relief.

[3] Because Helferty is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

Helferty brings his constitutional claims pursuant to § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Helferty has failed to allege plausible constitutional claims based on the events described in his Complaint.

A. **Claims Against Chester County Prison and Official Capacity Claims**

Helferty has failed to state a claim against the Chester County Prison or official capacity claims against the individual Defendants, all of whom are employed at the Chester County Prison. Initially, there is no legal basis for any § 1983 claims against the Chester County Prison because a correctional facility is not a "person" under § 1983 and therefore is not subject to liability under the statute. *See, e.g.*, *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009). This means Chester County Prison is not a proper Defendant in this case.

Suing government officials in their official capacity is essentially another way of bringing claims against the government entity that employs those officials, here, Chester County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). To plead a § 1983 claim against a municipal entity, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694.

4

"To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Since nothing in the Complaint suggests that any of the events at issue can be attributed to a municipal policy or custom, the Court will dismiss Helferty's claims against the Defendants in their official capacities. The claims against the Defendants in their individual capacities are addressed below.

B.   **Claims Against Warden Holland**

Helferty has not stated any basis for a claim against Warden Holland. In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and

occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Apart from identifying the Warden as a Defendant, Helferty raises no allegations against him. He does not explain what Warden Holland did or did not do and how any such actions or inactions reflect the Warden's involvement in the alleged violation of Helferty's constitutional rights. To the extent Helferty named Warden Holland as a Defendant because he is in charge of operations at the Chester County Prison, Holland's position alone is an insufficient basis for liability. *See, e.g.*, *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'

6

However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

C. **Claims Against Deputy Warden Roberts**

The sole basis for Helferty's claims against Deputy Warden Roberts is that he allegedly oversaw and approved Mastjnak's actions and failed to respond to Helferty's grievance. (Compl. at 5, 7.) As noted above, "[a]llegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. Helferty alleges in a conclusory manner that Roberts approved Mastjnak's actions but has not supported this allegation with any facts from which one could infer that Roberts was aware of the specific events involving Helferty and directly approved them. Additionally, a prison official's participation in the grievance process is generally an insufficient basis upon which to base that official's personal involvement in the underlying violations at issue in the grievance. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (evidence that high level official was sent a copy of documents related to prisoner's claim and official's lack of response did not establish personal involvement, nor did involvement of officials who only reviewed and denied prisoner's grievances). In sum, Helferty's allegation that Roberts failed to respond to his grievance and his unsupported contention that Roberts approved of

7

Mastjnak's actions do not plausibly establish Roberts's personal involvement in the relevant events in a manner that is sufficient to state a claim.

### D. Claims Against Mastjnak

Mastjnak is the Defendant who allegedly took Helferty's tablet from him on April 16, 2024. (Compl. at 5, 7.) Helferty asserts two constitutional violations as a result of the deprivation of his tablet. First, he alleges that he was denied access to the court. Second, he alleges that he was denied the right to receive mail in violation of the First Amendment.[4] For the reasons that follow, neither of Helferty's claims are plausible as he has pled them.[5]

#### 1. Denial of Access to the Courts

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'— that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415. Also, since there is no "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance

---

[4] Nothing in the Complaint suggests that Helferty was prevented from sending outgoing mail. Rather, the Complaint is based on the fact that, due to the prison's new system for handling incoming mail, the deprivation of his tablet precluded him from receiving mail.

[5] Helferty's failure to plead a constitutional violation provides additional grounds for the dismissal of his claims against the Defendants other than Mastjnak.

program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Regarding the lost remedy, a prisoner must explain how his claims "may no longer be pursued as a result of defendant's actions." *Monroe*, 536 F.3d at 206 n.9.

      Helferty has not stated a claim for denial of access to the courts because he has failed to plausibly allege that he suffered an "actual injury" due to the denial of access to his tablet. Although Helferty's grievance reflects that an April 24 hearing resolved in a "less than favorable" manner to him and that he has two "pending motions," (Compl. at 16), the Complaint does not specifically identify any nonfrivolous claims Helferty sought to pursue and how, specifically, the loss of his tablet affected his ability to pursue those claims thereby causing those claims to be lost. *See, e.g.*, *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim); *see also Talley v. Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (*per curiam*) (no denial of access to the courts where inmate "failed to allege what underlying nonfrivolous claims he was unable to pursue due to [a] two-week delay" caused by the defendants). He has also failed to allege how he lost a remedy, in particular with regard to the pending motions that have not yet been resolved. *See Ross v. Clerk of Courts of the Court of Common Pleas of Philadelphia, Pa.*, No. 17-5012, 2017 WL 5505013, at *3 (E.D. Pa. Nov. 15, 2017) (inmate could not state a claim for denial of access to the courts when his petition for allowance of appeal was still pending before the Supreme Court of Pennsylvania because he still had an opportunity to present his claims), *aff'd on other grounds*, 726 F. App'x 864 (3d Cir. 2018) (*per curiam*). Absent clarifying details about the nature of the claims Helferty sought to pursue and how his efforts to pursue those claims were specifically impeded, he has not stated a plausible claim for denial of access to the courts.

### 2. Denial of Access to Mail

Prisoners have a protected First Amendment interest in receiving mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *see also Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) ("[P]risoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." (internal quotations omitted)). This right, however, "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987))); *Abu-Jamal v. Price*, 154 F.3d 128, 133 (3d Cir. 1998) (observing that incarceration "necessitates that many rights and privileges, including rights derived from the First Amendment, be eliminated or curtailed"). "Accordingly, the right to receive and send mail can be restricted for legitimate penological interests." *Holbrook v. Kingston*, 552 F. App'x 125, 129 (3d Cir. 2014) (*per curiam*); *Edney v. Haliburton*, 658 F. App'x 164, 166 (3d Cir. 2016) (*per curiam*) ("[A] prisoner's right to receive and send mail can be restricted for legitimate penological reasons."); *see also Nasir v. Morgan*, 350 F.3d 366, 371 (3d Cir. 2003) (applying *Turner* to claims based on incoming mail).

Helferty's Complaint falls short of alleging a First Amendment violation. He pleads nothing about the circumstances that led Mastjnak to take his tablet including any details about the "incident" alluded to in the Complaint, the reason Mastjnak gave (if any) for taking the tablet, and how long he has been or expects to be deprived of his tablet. To the extent the tablet was taken as a result of a disciplinary infraction, which the Complaint suggests, Helferty does not explain the nature of that infraction and matters related to the imposition of any related disciplinary sanction. Without details clarifying the relevant events that gave rise to the deprivation of his tablet, Helferty has not "not nudged [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads

facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)). Accordingly, I will dismiss Helferty's First Amendment claim.[6]

## IV. CONCLUSION

For the foregoing reasons, Helferty is given leave to proceed *in forma pauperis* but his Complaint is dismissed for failure to state a claim. Helferty will be given leave to file an amended complaint in the event he can allege additional facts sufficient to state a plausible claim, with the exception of his claims against the Chester County Prison, which will be dismissed with prejudice.

An order follows, which provides further instruction as to amendment.

**BY THE COURT:**

*/s/ Mitchell S. Goldberg*
_____
**MITCHELL S. GOLDBERG,      J.**

---

[6] To the extent Helferty is also asserting a due process claim in connection with the interference in his ability to receive mail, which is unclear, he has not described what process, if any, he has been provided relative to the taking of his tablet and described how, if at all, that process was insufficient. *See Vogt*, 8 F.4th at 186 (explaining that "prisons must provide 'minimum procedural safeguards' when they 'censor or withhold delivery of a particular letter'" (quoting *Procunier v. Martinez*, 416 U.S. 396, 417 (1974))).