IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY M. HELFERTY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-2269 |
| | : | |
| ROBERT MASTNJAK, *et al.*, | : | |
|     Defendants. | : | |

MEMORANDUM OPINION

**Goldberg, J.**                                                                                                                                                                                         **August 6, 2025**

Defendants Robert Mastnjak, George Roberts, and Howard Holland have filed a Motion for Summary Judgment under Fed. R. Civ. P. 56 or, in the alternative, for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). Because Plaintiff's Amended Complaint fails to state viable claims and it is clear that Defendants are entitled to judgment in their favor as a matter of law, the motion shall be granted.

**I.    FACTUAL BACKGROUND**[1]

Anthony Helferty is a "convicted and sentenced parole violater" who is imprisoned in the Chester County Prison, in West Chester, PA. (Am. Compl., 4).[2] The three defendants are all

---

[1] The facts are taken from Plaintiff Helferty's Amended Complaint, filed on July 31, 2024. (ECF No. 12). Although he sought and leave was granted on November 26, 2024 to file a Second Amended Complaint within thirty days, Helferty did not file his Second Amended Complaint, which added two additional defendants, until March 19, 2025. This was several months after discovery had closed, and nearly one month after the instant summary judgment motion was filed on February 20, 2024. Helferty also failed to have the two additional defendants, Scott Pezick, a police officer, and Edward Nolan, a custodian of records, served. Because of these failures, the Second Amended Complaint is disregarded and the Amended Complaint is deemed the operative pleading in this case.

[2] References to page numbers are in accordance with ECF pagination of all filed documents.

1

prison officials: Howard Holland is the Warden, George Roberts is the "Deputy Warden of Treatment," and Robert Mastnjak is a Lieutenant. (Id., 2-3). The gravamen of Helferty's amended complaint, like his original, is the confiscation of his electronic tablet, which he alleges is his "sole access to the law library application, and the only means to access incoming mail." (Id., 5). Helferty submits this was a violation not only of the Fourteenth Amendment, but also of the Chester County Prison Handbook, which purportedly states at page 14 that inmates "'SHALL' be permitted access to legal resources" to "enable [them] to exercise [their] rights to the courts." (Id.). While acknowledging that Lt. Mastnjak legitimately charged him with misconducts for his misuse of the phone/tablet and lending his phone pin number to another inmate, Helferty nevertheless avers that even Restricted Housing Unit prisoners are "permitted law library access every Monday, Wednesday and Friday from 6:30 – 7:30 p.m.," and thus he was "still entitled to access the courts by utilizing the Chester County Prison Law Library." (Id., 6). Helferty, who had an upcoming parole hearing which ultimately "was completed with a less than favorable decision," alleges he "was conducting legal research right up to the moment the tablet was confiscated by Lieutenant Mastnjak," and "had he been permitted meaningful access to law library the result of his parole hearing would have been favorable to him." (Id.). He also avers that because he was treated differently than "other inmates similarly situated and under restriction for similar misconduct," he "would go a step further stating his equal protection rights guaranteed by the fourteenth amendment were also violated." (Id., 9).

Finally, Helferty claims that Defendants Holland, Mastnjak, and Roberts knew or "should have known that employees would likely and ultimately confront this particular situation," and should have identified that an employee's wrong choice would cause depravation (sic) of constitutional rights." (Id., 10). Because the defendants failed to supervise, train, and promulgate

2

regulations and "neglected to correct action while supervising," they "acted with deliberate indifference" in violation of Helferty's Eighth Amendment rights. (Id., 10-11). He seeks damages for the "psychological and emotional injury" caused by the deprivation of his First and Fourteenth Amendment rights and pain and suffering under the Eighth Amendment, and specifically demands $3,600 in consequential damages, $475 for pain and suffering, and $30,001 in punitive damages. (Id., 12). Finally, Helferty seeks "declaratory relief stating defendants actions did commit a constitutional violation against [him]," and injunctive relief to "promulgate regulations governing the law library access and mail without use of the electronic tablet without unnecessary delay of delivery of mail." (Id.).

In moving for judgment on the pleadings/summary judgment, Defendants point out that Helferty's Amended Complaint does not materially differ from his original. In my Memorandum and Order of June 25, 2024, I dismissed Helferty's claims against Chester County Prison with prejudice, but dismissed his claims against the individual Defendants without prejudice, and gave leave to amend. In his response to this motion, Helferty filed his own affidavit in which he states that he placed another amended complaint addressed to the "prison mail box rule" on December 23, 2024, to which he attached copies of a letter addressed to Defense Counsel containing additional complaints against Defendants, and a Petition for Preliminary Injunction Without Notice and Hearing. Helferty asserts that, based on these materials, Defendants are not entitled to the entry of judgment on the pleadings. He offers no evidence, beyond his own handwritten affidavits and filings, to demonstrate that a genuine issue of material fact exists which could support his constitutional claims.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to any claim or defense, and "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "As to materiality, … [o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment…; [f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A genuine dispute exits 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Stone v. Troy Constr., LLC, 935 F.3d 141, 148 n. 6 (3d Cir. 2019) (quoting Anderson, 477 U.S. at 248 (1986)).

A "judge's function" in evaluating a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "In making that determination, a court must view the evidence in the light most favorable to the opposing party." Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam). "A party will not be able to withstand a motion for summary judgment merely by making allegations." In re Tribune Media Co., 902 F.3d 384, 392-393 (3d Cir. 2018) (quoting In re Ikon Office Sols., Inc., 277 F.3d 658, 666 (3d Cir. 2002)). "Instead, the nonmoving party must 'designate specific facts' in the record to 'show that there is a genuine issue for trial.'" Id. (quoting Celotex v. Catrett, 477 U.S. 317, 324 (1986)); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). In other words, "[t]he moving party is entitled to

4

judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (citation omitted).

A motion for judgment on the pleadings may be filed under Fed. R. Civ. P. 12(c) after the pleadings are closed; the same standard of review as is applicable to motions to dismiss under Rule 12(b)(6) is utilized in considering motions under Rule 12(c). Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). That is, all of the allegations set forth in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. Id. The only difference is that on a motion for judgment on the pleadings, a court reviews not only the complaint, but also the answer, and all written instruments attached to the pleadings. Jiles v. Pa. DOT, Civ. No. 24-740, 2024 U.S. Dist. LEXIS 182995 at *2, 2024 WL 4436286 (M.D. Pa. Oct. 7, 2024).

As always, in cases involving pro se litigants, their submissions must be liberally construed, and "read to raise the strongest arguments suggested therein." Id. (citing, *inter alia*, Haines v. Kerner, 404 U.S. 519 (1972)). However, "a court's forgiving interpretation does not render immune from dismissal or summary judgment those claims that lack procedural or factual viability," and "bald assertions unsubstantiated by record evidence will not defeat a well-supported motion" for the entry of pre-trial judgment. Hena v. Vandegrift, 612 F. Supp. 3d 457, 472 (W.D. Pa. 2020).

### III. DISCUSSION

Helferty brings this action for the alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Under this statute,

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to

5

> be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . .

Thus, Section 1983 does not create any substantive rights, but instead provides remedies for deprivation of rights established elsewhere. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). Accordingly, "[t]he first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (quoting Nicini v. Mora, 212 F.3d 798, 806 (3d Cir. 2000)). In a Section 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). These allegations may take the form of "describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga, 806 F.3d at 222 (internal quotation omitted).

Suits against government officials in their official capacity is essentially another way of bringing claims against the governmental entity that employs those officials which, in this case, is Chester County. See Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) ("Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Monell v. N.Y.C. Dept. of Soc. Servs., 436 U.S. 658, 690, n. 55 (1978)). To plead a claim against a municipal entity, a plaintiff may proceed in two ways. Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019). The first is by showing that an unconstitutional policy

6

or custom of the municipality led to his injuries, the second is by demonstrating they were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice." Id.; Estate of Roman v. City of Newark, 914 F.3d 789, 798-799 (3d Cir. 2019). It is thus necessary to allege and ultimately prove that that the municipality's policy or custom caused the violation of the plaintiff's constitutional rights. Monell, 436 U.S. at 694. "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation marks and citation omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized bylaw, is so well-settled and permanent as virtually to constitute law." Id. And, "[t]o satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009).

Similarly, while it is settled law under Section 1983 that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds,* Taylor v. Barkes, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" Id. (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." Id.

7

"Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode, 845 F.2d at 1207.

In this action, Helferty is not complaining that Defendants violated his constitutional rights by promulgating or maintaining an improper policy. Instead, he complains that it was the *lack* of a policy and the failure to *update* the prison policies in the Chester County Prison Handbook to "demonstrate how an inmate would access his mail if his tablet was confiscated" that caused him harm. He claims the "policy makers," and Defendants Holland, Roberts and Mastnjak "knew or should have known that employees would likely and ultimately confront this particular situation, . . . that Defendant Mastnjak, or any other prison official would have to make a difficult choice in this particular situation," and "the defendants should have identified that an employee's wrong choice may cause depravation (sic) of constitutional rights." (Id., at 10).

It is somewhat unclear what the "particular situation" is to which Helferty is referring, but assuming he is referring to the removal of an inmate's tablet, he has produced no evidence showing how or why the taking of his tablet was unconstitutional, that there was a need for any policy other than the one which currently exists, how or why any of the defendants should have known the policy was inadequate or in need of correction, or that they made a deliberate or conscious choice to ignore the failure or inadequacy. Rather, he alleges only that Warden Holland "was aware of the policies," that he "should have amended the policies to exact and perfect regulations for alternative access when confronted with a similar situation," and "had a duty and obligation to supervise, train and discipline his subordinates."

Nor does Helferty allege how a new or revised policy would have alleviated or prevented the harm which he allegedly suffered from occurring. Given that there is nothing pled or shown that Holland is a decisionmaker who has final authority to establish municipal policy or that he

8

ever issued an official proclamation, policy or edict, or facilitated a custom whereby inmates constitutional rights were violated, there is no foundation on which to hold him liable.

What's more, Helferty also has freely acknowledged in his amended complaint that he knew his tablet was subject to confiscation and his ability to access the law library and send and receive mail could be restricted or prohibited for valid penological reasons, in accordance with the Chester County Prison Handbook and "title 37 Pa. Code § 95.234 . . . at (4)." (Id., 5-9). He further admits in his pleading that he was found guilty through the prison grievance process of misuse of phone/tablet and improperly lending his phone pin number to other inmates. (Id.).[3] I therefore find that Helferty's constitutional claims against the County and the individual defendants in their official capacities fail both on the face of the pleadings and on the record. Judgment on the pleadings and summary judgment shall therefore be entered in favor of Chester County, and in favor of Holland, Roberts and Mastnjak in their official capacities.

Turning to Helferty's claims against Roberts and Mastnjak[4] in their individual capacities, Helferty alleges that Mastjnak took his tablet from him on April 16, 2024 while he was conducting legal research thereby denying him access to the court and his mail in violation of the First and Fourteenth Amendments, and that Defendant Roberts oversaw and approved Mastnjak's action. (Am. Compl., 5-10). He claims that in so doing, the defendants acted with deliberate indifference and thereby violated his rights under the Eighth Amendment. (Id., 11).

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of

---

[3] Helferty's guilt on these misconduct charges is also substantiated by the documents affixed as Exhibit A to the instant motion. (ECF No. 30).

[4] Unlike the other individual defendants, Helferty sued Holland only in his official capacity. (Am. Compl., 2).

speech, or of the press, or the right of the people to peaceably assemble and to petition the Government for a redress of grievances." And Section 1 of the Fourteenth Amendment prohibits "any State" from depriving "any person of life, liberty, or property, without due process of law," or denying "any person within its jurisdiction the equal protection of the laws." The First Amendment applies with equal force to the States through the Fourteenth Amendment. Mills v. Alabama, 384 U.S. 214, 218 (1966).

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Id. (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002). "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." Christopher, 536 U.S. at 415. Indeed, there is no right to a law library or to legal assistance – only access to the courts, and thus "prison law libraries and legal assistance programs are not ends in themselves, but only the means of ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Lewis v. Casey, 518 U.S. 343, 351 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)).

Prisoners also possess a generally protected First Amendment interest in receiving mail. See Thornburgh v. Abbott, 490 U.S. See Thornburgh v. Abbott, 490 U.S.01, 403 (1989) ("Regulations promulgated by the Federal Bureau of Prisons broadly permit federal prisoners to receive publications from 'the outside,' but authorize prison officials to reject incoming

10

publications found to be detrimental to institutional security."); Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) ("[P]risoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." (internal quotations omitted)).  However, this right "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration.  Id. (quoting Turner v. Safley, 482 U.S. 78, 85 (1978); Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998) (noting that incarceration "necessitates that many rights and privileges, including rights derived from the First Amendment, be eliminated or curtailed.").

The Eighth Amendment prohibits the imposition of "cruel and unusual punishment."  This prohibition restrains prison officials from certain actions (such as use of excessive force against prisoners) and imposes on them a duty to provide "humane conditions of confinement."  Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "That is, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates."  Id. (internal quotation marks and citation omitted).  For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must result in the "denial of [the] minimal civilized measure of life's necessities," and a condition of confinement violates the Eighth Amendment only if it is "so reprehensible as to be deemed inhumane under contemporary standards" or "deprives an inmate of the minimal civilized measure of the necessities of life."  McKinney v. Piazza, 2022 U.S. Dist. LEXIS 225053 at *19 (D. N.J. Dec. 14, 2022) (quoting Farmer, 511 U.S. at 835); Dickens v. Taylor, 464 F. Supp. 2d 341, 348 (D. Del. 2006).

As with his original complaint, Helferty has again failed to state a claim for denial of access to the courts because he has not plausibly alleged that he suffered an "actual injury" as a result of the denial of access to his tablet.  While his grievance reflects his April 30, 2024 Disciplinary

11

Hearing resulted in a less than favorable decision, Helferty does not show how having access to the tablet would have resulted in a different, more favorable outcome. (Defs.' Mot. for Summ. J., Ex. A). See e.g. Monroe, 536 F.3d at 206 (plaintiffs' allegations that they "lost the opportunity to pursue attacks of their convictions and civil rights claims" without specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim); Talley v. Varner, 786 F. App'x 326, 328 (3d Cir. 2019) (*per curiam*) (no denial of access to the courts where inmate "failed to allege what underlying nonfrivolous claims he was unable to pursue due to two week delay" caused by the defendants).

And Helferty also fails in his effort to assert a First Amendment claim for denial of his access to his mail. By its nature, "incarceration almost always results in a narrowing, not a broadening, of constitutional protections," and inmates' constitutional rights often "must in some respects be limited in order to accommodate the demands of prison administration and to serve valid penological objectives." Fraise v. Terhune, 283 F.3d 506, 515 (3d Cir. 2002). Id. Turner made clear that this principal extends to the right to receive and send mail, such that this right can also be restricted for legitimate penological reasons. Turner, 482 U.S. at 85. And given that the judiciary is "ill equipped to deal with the increasingly urgent problems of prison administration and reform," it "should therefore give significant deference to judgments made by prison officials in establishing, interpreting, and applying prison regulations." Id., at 84-85. As noted, Helferty admits on the face of his amended complaint that his tablet was confiscated for a valid penological reason in accordance with the Chester County Prison Handbook and 37 Pa. Code § 95.234, because he misused the tablet and improperly lent his phone pin number to another inmate.

Accordingly, judgment on the pleadings and judgment as a matter of law are properly entered in favor of the individual defendants on Helferty's First and Fourteenth Amendment claims.[5]

As for his Eighth Amendment claim, the mere assertion that the defendants were "deliberately indifferent" does nothing to support an actual cause of action. It is incumbent upon Helferty at this point in the proceedings to show that he was subject to cruel and unusual punishment, deprived of the "minimal civilized measure of life's necessities," or subject to conditions of confinement "so reprehensible as to be deemed inhumane under contemporary standards." The mere confiscation of a tablet is not cruel, unusual, or inhumane, and hence Helferty has not stated a cause of action under the Eighth Amendment. Judgment shall therefore also be entered in favor of the defendants and against the plaintiff on this claim.

## IV. CONCLUSION

For all of the reasons outlined above, Defendants' Motion for Summary Judgment or in the alternative, for Judgment on the Pleadings shall be granted in its entirety.

An appropriate Order follows.

---

[5] Although not entirely clear from his pleading, to the extent that Helferty is also endeavoring to pursue an equal protection claim, I find summary judgment in the defendants' favor is also appropriate. Although he broadly alleged he was treated differently than other similarly situated inmates, including those in the restricted housing unit who could submit requests for library time, Helferty has provided no proof that he was treated differently from similarly situated others or that those other inmates were not adjudicated guilty of misusing their tablets or lending their phone pins to others.